## Morris et al. *v.* Covington, Executor.

An appeal will not be dismissed on the ground that the appeal bond is not payable to the appellee, where the name of the person in whose favor it was actually made was inserted through a clerical error. Such an error, will not discharge the surety.

The heirs of the wife are entitled to one half of property purchased by the husband during the existence of the community, though not paid for till after the death of the wife, subject to the payment of one half of the community debts.

A having purchased at judicial sale property sold as belonging to the succession of B, assumed, as part of the price, the payment of a note, secured by mortgage on the property. Pending an action by the heirs of the surviving wife of B, claiming one half of the property, on the ground that the whole belonged to the community of acquêts formerly existing between the spouses, an attorney at law, practising in the court in which the suit was pending, purchased the mortgage and note: *Held,* that the purchase, being by a public officer connected with the court, was a nullity, C. C. 2422.

A sale made under a judgment rendered in an action in which there was no defendant, is a nullity. The nullity of such a sale, is not required to be pronounced judicially.

Where the payee of a note, secured by mortgage, executed for a community debt, receives from the maker crops, made on the community property, more than sufficient to discharge the debt, but, instead of applying their proceeds to its payment, pays them over to the maker, and gives him personally credit for the amount of the note, it is a novation of the debt, and will discharge the community.

Where a lot of ground purchased during the existence of the community of *acquêts* is incorrectly described in the conveyance, but, after the dissolution of the community by the death of the wife, a new conveyance is executed to the husband for the property with a correct description, the title thus acquired will enure to the benefit of the community.

A possessor in good faith is entitled to be paid for useful improvements made by him on the property.

APPEAL from the District Court of Madison, *Curry,* J. *Snyder, Stacy* and *Sparrow,* for the appellants, cited 7 La. 222. 1 Rob. 149.

*Amonett,* pro se. *Thomas,* on the same side. *Pepper,* for the intervenor *Fisk.* *T. N. Pierce,* for the intervenor *White.*

The judgment of the court was pronounced by

Rost, J. This case is a striking instance of the extent to which bad faith and ignorance can mystify truth, and involve in confusion and doubt the plainest questions of common right.

JONES.
*v.*
HUNTER.

2   259
f52   60
2   259
e110 438

*George Deahl* and *Ferriby Smith* were married, in April, 1834. In October of the same year, Deahl purchased from *James Graham* a plantation and slaves, for the sum of $30,000, which the act of sale states was paid at the time of the sale. It is shown, however, that *James Graham* received in lieu of money three promissory notes of $10,000 each, drawn to the order of *Charles S. Lee*, and endorsed by him and other persons. *Deahl*, to secure the endorsers, executed in their favor a mortgage on the plantation and slaves, which was duly recorded. The wife of *Deahl* died in 1836, before any part of the purchase money had been paid. No inventory was made, and her succession never was administered upon. *Deahl* remained in possession of the whole property as before, received the proceeds of the crops, and paid the two first notes given to *James Graham*. In June, 1841, the whole property which he possessed was seized and sold by the marshal, under execution, and adjudicated to *R. Slaughter*, who assumed to pay the encumbrances existing upon it at the time, in part payment of his bid.

Those encumbrances appear to have been: first, a sum of $11,636 68 cents, a balance due on account of the purchase, and covered by the mortgage given to the endorsers of the notes; second, the sum of $6,000, being the amount of a special mortgage in favor of *Burke, Watt & Co.*, consented to by *Deahl* in the year 1840.

*Slaughter* died, in October, 1841, leaving the original defendant, *Covington*, his testamentary executor. The plaintiffs have instituted this action against him, alleging that they are the heirs at law of *Ferriby Smith;* that they have accepted her succession under benefit of inventory ; and that they are entitled to recover one undivided half of the property, existing at the time of her death in community with her husband *George Deahl*, and now forming part of the succession of *Slaughter*, the said property consisting of four tracts of land and twenty-seven slaves. The executor, *Covington*, having been removed from office, *William Amonett* was appointed dative testamentary executor, and the suit was continued against him.

The defendant generally denies the allegations of the petition, avers title under the marshal's sale; the existence of the mortgage for $30,000 on the property; and also that the community owes *George Deahl* over $31,000, one half of which the plaintiffs are bound to reimburse. He finally alleges that, in case of eviction, he is entitled to recover the value of his improvements, which he assesses at $10,000. There is also a call in warranty against *George Deahl* and *Francis I. Thompson*, the creditor at whose suit the property was sold by the marshal.

*Alvarez Fisk*, having become the assignee of the mortgage debt mentioned as belonging to *Burke, Watt & Co.*, sued the dative executor of *Slaughter* in the Court of Probates, and obtained a judgment under which all the slaves in his possession as executor, but two, were adjudicated to him, the said *Fisk*, who removed them to the State of Mississippi. He subsequently intervened in this suit for the preservation of his rights.

*William Amonett* and one *Benjamin F. White* purchased the unpaid note of $10,000, given by *Deahl* to *Graham*, and obtained from *Miller*, the first endorser on that note, a transfer of the mortgage given to secure the endorsement, and still affecting the property in the possession of *Slaughter*. *Amonett* and *White* obtained in the Court of Probates, a judgment against *Amonett*, as dative executor of *Slaughter*, on this note, with privilege and preference on the pro-

perty in his hands. Under this judgment the land was sold at probate sale, in 1844, and adjudicated to *Thomas W. Amonett*, for little more than one fourth of its apprised value in the inventory of *Slaughter*. This purchaser intervened for the preservation of his rights.

We have only gone into the labyrinth of interventions, amended petitions and answers, bills of exception, motions and agreements, which fill the record, so far as it was necessary to the view we have taken of the rights of the parties. The unnecessary confusion created by all this chicanery, is unprecedented. It became so intolerable in the court below that the judge, unable, as he supposed, to arrest the evil in any other manner, at last cried out in despair, to the incessant applicants for intervention : " You cannot come in, the case is full;" and, not recovering to the last his acknowledged powers of discrimination, gave judgment in favor of the defendant, and dismissed all the intervenors with costs.

The plaintiffs appealed, and the intervenors have asked that the judgment be amended in their favor. A motion to dismiss has been made on the ground that the appeal bond was made in favor of a person other than the defendant; the bond is in favor of the defendant and of the intervenors. The insertion of the name of *Covington*, for that of *Slaughter*, was a clerical error, which would not discharge the surety. The motion must be overruled.

The judgment appealed from is clearly wrong. The plaintiffs having proved that they are the heirs of *Ferriby Smith*, the title to one undivided half of the land and slaves purchased during the community, vested in them at her death. *Slaughter* only acquired by the marshal's sale the right, title and interest of *Deahl* in the property, which was one undivided half of that portion of it which belonged to the community; the plaintiffs continued to be the owners of the other half, subject to the payment of one half of the community debts.

The purchase by *Amonett & White* of the note of $10,000, and of the mortgage by which it was secured, after these proceedings had been commenced, was the purchase of a law suit. Those claims were involved in this litigation; the extent of the liability of *Slaughter* under his assumption to pay the mortgage, depended upon the event of this suit ; if the plaintiffs succeeded, his succession was only bound for one half of it, and the rights of the holders of the note and mortgage were, in relation to that succession, litigious rights. *William Amonett*, exercising his profession in the court under the jurisdiction of which those rights fell, could not purchase them, and acquired no title to them. Civil Code, art. 2422. The purchase took place before his appointment as dative executor: but he was executor when the judgment was rendered, and the facts that there was no defendant in the suit, and that he confessed a judgment in his own favor, when he had a valid defence to make for half of the claim, are conclusive against him. *White*, who joined with him in the perpetration of this fraud, is in no better situation. The probate sale to *Thomas W. Amonett* is an absolute nullity, and the succession of *Ferriby Smith* is entitled to recover, as damages, from *Amonett & White*, one half of the rents and profits due since the adjudication, at the rate of $800 a year.

The claim of *Fisk* cannot be viewed as a community debt. *Glendy Burke*, a partner of the firm of *Burke, Watt & Co.*, testifies that, in 1840 and 1841, after the date of the notes held by *Fisk*, his firm received from *Deahl* crops of cotton more than sufficient to pay them ; and the circumstance that, instead of applying their proceeds to the payment of the debt, they saw fit to pay them over to *Deahl*, and to give him personally credit for the notes, clearly amounts to

MORRIS
v.
COVINGTON.

a novation, by which the community would have been discharged, if it was ever liable, a fact not made certain.

It is proved that only fifteen of the slaves purchased by *Fisk* belong to the community. These he must return, in order that a partition may be effected between him and the plaintiffs. He must moreover account to the succession of *Ferriby Smith*, at the rate of $350 a year, since the date of his purchase, for one half of the assessed value of the hire of said slaves.

The four lots of land sold by *Graham* to *Deuhl*, in 1834, are described in the act of sale as being nos. 53, 54, 55, and 56, in township no. 15, of range no. 13 east. It appears that there was no lot bearing no. 56 on the plat of survey of that township, and that the lot intended to be conveyed was no. 52. After the death of *Ferriby Smith*, *Graham*, by a notarial act passed between him and *Deahl*, recognized the error, and conveyed to the latter no. 52, in execution of the previous contract, and for the consideration therein stated. This act intended to give effect to the original sale by correcting an error in the description of the property sold, did not take lot no. 52 out of the community. The circumstance that *Graham* acquired a perfect title to that lot, after 1834, cannot affect the rights of the succession of *Ferriby Smith ;* the title when acquired, inured to its benefit.

*Slaughter* appears to have purchased the property in good faith, and is entitled to be paid for the useful improvements made by him. We will allow, as an ample compensation for those improvements, the crops of 1842 and 1843, received by his executor after the institution of this suit.

The succession of *Ferriby Smith*, is entitled to one undivided half of lots nos. 52, 53, 54 and 55, and of the two slaves, *Doctor Gilbert* and *Hannah*, in the possession of the succession of *Slaughter*. It is also entitled to one undivided half of fifteen of the slaves in the possession of *Fisk*, and to the damages due by *Fisk*, *Amonett* and *White ;* but, as it is proved that the community which existed between *Deahl* and his wife is largely indebted, those assets must be sold to pay those debts; and, as the joint owners of the land and slaves have not asked a division in kind, the decree of the court will be that the property be sold to effect the partition.

The plaintiffs allege themselves to be beneficiary heirs. On this allegation they are not entitled to the possession of the property, and, before their residuary rights can be ascertained, the succession of *Ferriby Smith* must be regularly administered.

For the reasons assigned it is ordered, that the judgment be reversed ; that the succession of *Ferriby Smith* recover from *William Amonett* and *Benjamin F. White, in solido,* the sum of four hundred dollars a year, from the 3d of July, 1844, until paid, and from *Alvarez Fisk*, the sum of $350 a year, from the 5th of August 1843, until paid. It is further ordered that *William Amonett,* dative testamentary executor of *Robert Slaughter,* surrender in execution to the sheriff, lots nos. 52, 53, 54 and 55, in township no. 15, of range no. 13 east, in the land district north of Red River, and that a writ of distringas issue if necessary against the executor personally to enforce this decree. It is further ordered that *Alvarez Fisk* surrender in execution to the sheriff, the fifteen slaves whose names follow: *Peter, Albert, Julia, Catherine, Lucinda, Lucy, Abram, Fanny, Leach, Sally, Peter,* an infant, *Bob,* little *Maria* and her child; and that a writ of distringas issue if necessary to enforce this decree. It is further ordered, that the sheriff proceed to advertise and sell the property surrendered, in the manner

MORRIS.<br>v.<br>COVINGTON.

pointed out by law in cases of partition; that one half of the nett proceeds of the sale be paid over to the succession of *Ferriby Smith;* that one half of the nett proceeds of the property surrendered by the succession of *Slaughter,* be paid over to his executor ; and that one half of the nett proceeds of the slaves surrendered by *Fisk,* after deducting therefrom whatever he may owe the succession of *Ferriby Smith* under this decree, be paid over to him.   It is further ordered, that the improvements made by *Robert Slaughter* on the land, be compensated with the crops of 1842 and 1843, received by his executor.   It is further ordered, that the rights of the succession of *Slaughter,* against the succession of *George Deahl,* and also against *Francis I. Thompson,* by reason of their warranty, be reserved.   It is further ordered that, in order to carry this decree into effect, this case be remanded, with direction to the District Court to appoint an administrator to the succession of *Ferriby Smith* according to law. It is further ordered, that the administrator thus appointed represent the succession in the execution of this decree ; and that, after payment in due course of administration of one half of the debts of the community, which existed be-tween *George Deahl* and *Farriby Smith,* he be made to account to the plaintiffs, in equal shares, for any balance in his hands.

It is further ordered, that the interventions of *Thomas W. Amonett,* and of *Rogers,* be dismissed at their costs; and that one half of the costs in both courts be paid, *in solido,* by *William Amonett* and *Benjamin F. White,* the other half to be paid in equal shares by *Alvarez Fisk,* the succession of *Slaughter,* and the successions of *Ferriby Smith.*   It is finally ordered, that the rights of the succession of *Ferriby Smith* to the slaves, *Doctor Gilbert,* and *Hannah,* be reserved.